NOT DESIGNATED FOR PUBLICATION

No. 118,218

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.C-R., M.J.D-R., E.L-R.,
Y.L-R. and I.R.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed April 6, 2018. Affirmed.

*Raymond E. Probst Jr.*, of The Probst Law Firm P.A., of Kansas City, for appellant.

*Crystal Elaine Ellison*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, for appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: The Wyandotte County District Court terminated the right of S.R. to parent her minor children because, in part, she persisted in associating with two men who had physically abused her and sexually assaulted one of her daughters. At the time of the termination hearing, S.R. could not show she had stable housing or employment, and the district court weighed those circumstances against her. S.R. has appealed on the grounds the evidence failed to support the ruling. We find no error and affirm.

1

The Department for Children and Families investigated reports it received in October 2015 that Armando Mendoza-Acosta had been sexually abusing D.C.-R., S.R.'s eldest child. D.C.-R. confirmed the abuse. Mendoza-Acosta had been S.R.'s boyfriend. Even after they broke up, Mendoza-Acosta would enter the house and abuse D.C.-R. The evidence showed that Eric Lopez-Garcia, S.R.'s then current boyfriend, sometimes facilitated Mendoza-Acosta's entry into the residence. S.R. said she was afraid of Mendoza-Acosta and believed he was capable of killing her.

DCF case workers arranged for S.R. and her children to move into a shelter for victims of domestic violence. S.R. and her children stayed there briefly but moved back in with Lopez-Garcia. In mid-November 2015, the State filed petitions to have the children declared in need of care. They are:  D.C.-R., a girl who was then about six years old; M.J.D.-R., a boy then about four years old; E.L.-R., a boy then just over a year old; and Y.L.-R., an infant girl. The district court entered temporary orders placing the children in State custody.

The case workers developed a family reintegration plan for S.R. and the children. During that process, D.C.-R. told case workers that Lopez-Garcia had been sexually abusing her. The case workers also had some indication that Mendoza-Acosta had abused M.J.D.-R. The reintegration plan included requirements that S.R. participate in screening and counseling related to domestic violence, drug abuse, and other issues. She was also required to obtain suitable housing for the family and to maintain gainful employment. The case workers stressed to S.R. that she could not continue to associate with Mendoza-Acosta or Lopez-Garcia if she wanted to regain custody of her children.

Despite those admonitions, S.R. continued to live with Lopez-Garcia. He apparently was incarcerated for a time during the pendency of these proceedings, and

S.R. allowed him to move back in with her upon his release from custody. S.R., nonetheless, reported to a therapist involved in her domestic violence counseling that she feared Lopez-Garcia and that he physically abused her.

S.R.'s fifth child, I.R., a boy, was born in March 2017, and the State immediately filed a petition to have him declared a child in need of care. I.R. was removed from S.R.'s custody and became a ward of the State. The cases for each of the children were heard together in the district court, and they have been consolidated for this appeal.

The State filed a motion to terminate S.R.'s parental rights to all five children on April 11, 2017. The district court heard evidence on the motion on June 1 and June 27. The evidence included what we have already outlined and that S.R. had complied with many of the requirements of the reintegration plan. S.R. testified that she had separated from Lopez-Garcia earlier in the year and had been living with her aunt. At the hearing, she said she had leased a three-bedroom house through her aunt. But no case worker had confirmed the arrangements or inspected the house. S.R. acknowledged her employment had been irregular, especially while she was pregnant with I.R. She testified that her current boyfriend employed her in his construction business and paid her in cash. The boyfriend testified and confirmed the employment.

S.R. testified that she no longer had anything to do with Mendoza-Acosta or Lopez-Garcia. The evidence showed that beginning in 2015 case workers had encouraged S.R. to file for protection from abuse orders against Mendoza-Acosta and Lopez-Garcia. S.R., however, did not do so until April 2017. Those petitions were dismissed when S.R. failed to appear for a scheduled court hearing. S.R. refiled her petitions on May 22, and a hearing for an order against Lopez-Garcia had been set for June 28.

In granting the State's motion to terminate parental rights, the district court specifically pointed out S.R. had put the men in her life, meaning Mendoza-Acosta and

3

Lopez-Garcia, ahead of her children and mentioned in particular her decision to continue associating with Lopez-Garcia and her failure to pursue protection from abuse orders promptly or conscientiously. The district court also cited S.R.'s failure to obtain suitable housing and to maintain employment. In light of the evidence, the district court found S.R. to be unfit based on five statutory grounds: Emotional or mental illness rendering her unlikely to care for the ongoing physical, mental, or emotional needs of the children, K.S.A. 2017 Supp. 38-2269(b)(1); physical, mental, or emotional neglect of the children, K.S.A. 2017 Supp. 38-2269(b)(4); failure of reasonable efforts to rehabilitate the family, K.S.A. 2017 Supp. 38-2269(b)(7); lack of effort to adjust her circumstances to meet the children's needs, K.S.A. 2017 Supp. 38-2269(b)(8); and failure to carry out a reintegration plan, after the children had been removed from her physical custody, K.S.A. 2017 Supp. 38-2269(c)(3). The district court also found the conditions of unfitness were unlikely to change in the foreseeable future and the best interests of the children would be served by terminating S.R.'s parental rights. K.S.A. 2017 Supp. 38-2269(a), (g)(1). S.R. has timely appealed.

LEGAL ANALYSIS

On appeal, S.R. challenges the sufficiency of the evidence to support each legal component of termination: parental unfitness, unlikelihood of change, and children's best interests. She does not dispute the underlying facts, such as the abuse of D.C.-R. and her effort or lack of effort in distancing herself from Mendoza-Acosta and particularly Lopez-Garcia. Rather, she contends the facts do not warrant the district court's legal conclusions.

*Governing Legal Principles*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L.

Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2017 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2017 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2017 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2017 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against S.R.

Having found unfitness and unlikelihood of any timely change, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g). As directed by the language of K.S.A. 2017 Supp. 28-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." The district court should weigh the benefits to the child in terminating the relationship with the parent, given the characteristics and duration of the unfitness, against the emotional trauma to the child that may result from

that termination and the removal of the parent from his or her life. See *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).

The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*Governing Principles Applied*

The evidence showed that S.R. had a continuing relationship with Lopez-Garcia from at least late 2015 through early 2017 even though she was aware he had been sexually abusing D.C.-R. and apparently assisting Mendoza-Acosta in doing so for some of that time. Both men also physically abused S.R. Although various case workers told her she could not regain custody of her children if she continued to associate with the two men, S.R. continued to live with Lopez-Garcia and even invited him back into her home after he had been incarcerated. S.R. shilly-shallied and essentially ignored the case workers' recommendation she obtain protection from abuse orders against Mendoza-Acosta and Lopez-Garcia. S.R. only parted ways with Lopez-Garcia around the time the State filed the motion to terminate her parental rights. She then filed for protection from abuse orders but seemed to pursue them only indifferently, as the district court sized up her efforts. Despite S.R.'s progress with other aspects of the family reintegration plan, her unwillingness to firmly, aggressively, and promptly distance herself from Lopez-Garcia in particular looms large in the finding of unfitness.

The pattern and persistence of the abusive conduct directed at S.R. and D.C.-R. necessarily were, to say the least, corrosive of any semblance of a normal, healthy family environment. All of the children would have been adversely affected mentally and emotionally if they had to live under those conditions. Here, the physical violence and sexual abuse were undisputed. So was S.R.'s willingness to maintain some form of domestic relationship with Lopez-Garcia even after her children had been taken into State custody—a willingness that continued virtually throughout these proceedings. The district court essentially concluded that S.R.'s course of behavior demonstrated a willful disregard for the well-being of her children and a preference to remain with a known abuser. The district court, likewise, doubted the efficacy and apparently the genuineness of S.R.'s late efforts to shed Lopez-Garcia.

We conclude that those circumstances establish that a rational fact-finder could recognize S.R. to be an unfit parent within the meaning of K.S.A. 2017 Supp. 38-2269. S.R.'s actions (and her inactions in dealing with Lopez-Garcia) demonstrate neglect of her children and a lack of effort on her part to adjust her situation to the needs of her children. This court has held that a parent's decision to continue residing during termination proceedings with another adult who engages in domestic violence and sex abuse supports a finding of unfitness. *In re C.K.*, No. 115,755, 2017 WL 1197708, at *8 (Kan. App. 2017) (unpublished opinion); *In re C.W.*, No. 113,547, 2015 WL 5311260, at *18-19 (Kan. App. 2015) (unpublished opinion). Here, S.R.'s late efforts to distance herself from Lopez-Garcia were too little. The district court properly found S.R. unfit under K.S.A. 2017 Supp. 38-2269(b)(4) and (b)(8) for that reason. S.R.'s association with Lopez-Garcia also supports findings of unfitness under K.S.A. 2017 Supp. 38-2269(b)(7) and (c)(3) related to the failure of a reasonable plan for family reintegration, especially in combination with S.R.'s inability to find suitable housing in a timely fashion and her lack of substantial employment. The district court had the latitude to discount the sufficiency of S.R.'s comparatively brief job with her new boyfriend considering the cash-only

7

compensation she ostensibly received. In short, the evidence supported unfitness on each of those grounds.

We do not consider the district court's additional statutory basis that S.R.'s mental illness rendered her unfit under K.S.A. 2017 Supp. 38-2269(b)(1). The evidence at the termination hearing did not include expert testimony that S.R. suffered from a diagnosable mental illness. The district court essentially reached a lay conclusion that a person who would persist in living with a known abuser even though doing so would preclude the return of that person's children must be mentally infirm.

The district court's conclusion that S.R.'s unfitness as a parent would not likely change in the foreseeable future presents a closer question. In assessing alleviation of unfitness, the courts must measure the appropriate period by taking account of how children experience the passage of time. K.S.A. 2017 Supp. 38-2201(b)(4). Statutory "child time" differs from adult time because for young children in particular a month or a year reflects a greater portion of their lives than the same period would for older teens or adults, and that difference in perception typically favors a prompt case disposition achieving permanency. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. ___ (November 9, 2017); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion).

In reviewing this component of the district court's determination, we pay close attention to the gravity of the conditions that S.R. failed to address over the duration of these proceedings. S.R. was unwilling or unable to disassociate herself from men who had physically abused her and had sexually abused at least one of her children. She continued to reside with Lopez-Garcia until shortly before the termination hearing— almost 15 months—even though she knew the relationship to be an insurmountable obstacle to regaining custody of her children. The brevity of that separation and S.R.'s

less than dutiful pursuit of protection from abuse orders against Mendoza-Acosta and Lopez-Garcia support the district court's conclusion that the circumstances had not fundamentally changed for the better. The children were all relatively young; they ranged in age from about eight years old to barely two months old at the time of the termination hearing. S.R. had not had custody of the children for an extended period of their lives. Given the duration of the proceedings and the application of child time, the district court found that S.R. had not demonstrated that this condition rendering her unfit had actually changed or would change in the foreseeable future. The time for permanency for the children had arrived.

The district court's negative assessment of S.R.'s employment situation bolsters the determination that the overall circumstances of unfitness would not be alleviated in some reasonable time. S.R. had not demonstrated a pattern of gainful employment. At the termination hearing, she described a comparatively new job the terms of which were, at best, sketchy. The lack of sustained gainful employment fairly contributed to and supported the district court's conclusion.

We see less support with respect to housing. Although S.R. had not recently shown she could provide adequate housing for her children—she had been living with another family member—she represented at the termination hearing that she had leased a suitable house. S.R.'s late announcement had prevented case workers from verifying that arrangement and inspecting the home before the hearing. But those particulars could have been checked in short order. If this were the only consideration, we might be inclined to view the district court's conclusion that S.R.'s unfitness would not likely change in the foreseeable future as insufficiently supported. But the housing situation presented a distant tertiary concern behind S.R.'s employment and far behind S.R.'s deleterious association with Mendoza-Acosta and Lopez-Garcia.

9

The district court's finding that S.R.'s unfitness likely would not change in the foreseeable future—measured in appropriate child time—was sufficiently supported in the evidence.

Turning to the district court's best interests determination, what we have said to this point effectively guides our review and directs our conclusion. The district court understood both the governing legal principles and the relevant evidence. Applying an abuse of discretion standard, we ask whether the district court's conclusion was so far afield no other judge would have reached the same result on this evidentiary record. That is plainly not true.

The home environment in which the children found themselves in 2015 was especially pernicious. We needn't recount the circumstances again. S.R.'s response was pallid virtually throughout these proceedings, epitomized by her continued domestic relationship with Lopez-Garcia. By the time of the termination hearing, the children had been removed from S.R.'s custody for a long period and had no extended contacts with her, only short visits. Under the circumstances, more than one district court would find the best interests of the children favored termination of S.R.'s parental rights. We find no abuse of discretion.

Affirmed.